CHICAGO & NORTHWESTERN RAILWAY COMPANY

V.

HENRY P. BECKER AND NATHAN UNDERWOOD, FOR
USE, ETC.

*Railroads—Contracts of Affreightment—Voidability—Rebates—Assignment of Claim for.*

In an action against a railroad company for the recovery, for the use of

C. & N. W. Ry. Co. v. Becker.

third persons, of certain rebates claimed to be due upon freight shipped, an order directed to such company by the shippers having requested such payments to be made to them, this court holds that said order referred only to sums already due or to become due on freight shipped at the date thereof; that payments by the company to a subsequent assignee was a good defense against its makers, and that as to the beneficiaries named, the same would be good so far only as in equity they were the owners of the claim sued upon.

[Opinion filed June 14, 1889.]

APPEAL from the Superior Court of Cook County; the Hon. ELLIOTT ANTHONY, Judge, presiding.

Mr. W. C. GOUDY, for appellant.

The principal question in this case is as to the validity of the agreement made by Becker & Underwood with the freight agent of the railway company. It was made in violation of the law which prohibits discrimination. The object was to give a preference to Becker & Underwood over other persons shipping the same kind of property to be carried between the same points. Such an agreement is against public policy, and prohibited by the rules of the common law, and also by the statute of this State. No recovery can be had on such a contract.

It is scarcely necessary to cite authorities upon this question, the principle being so well established. It is sufficient to refer to the case of L. D. & S. R. R. Co. v. Ervin, 118 Ill. 256, which is a case directly in point. The action in that case was brought by the Ervins against the railway company to recover for rebates claimed to be due them on the contracts for the shipment of grain. It was there held that such a contract came within the provisions of the act approved May 2, 1873. The court also held that such a contract was a discrimination prohibited by the common law, and for these reasons they held that there could be no recovery.

The court in that case say: " Unjust discrimination by common carriers was not sanctioned by the common law. In the case of Chicago and Alton Railroad Co. v. The People, 67

Ill. 16, this court say : 'The duties and liabilities of a common carrier are clearly defined by the common law, and have been so defined for centuries.   *   *   *   Another well settled rule of the common law in regard to common carriers is, that they shall not exercise any unjust or injurious discrimination between individuals in their rates of tolls.'   In Messenger et al. v. Pennsylvania Railroad Co., 36 N. J. Law, 407, it was decided that an agreement by a railroad company to carry goods for certain persons at a cheaper rate than they will carry, under the same conditions, for others, was void, as creating an illegal preference.   The plaintiffs in that case had made shipments at the regular rates, under an agreement that they should be allowed such drawbacks as would bring their freights twenty and ten cents per hundred lower than the lowest rate given to any other person.   The suit was to recover such drawbacks.   The contract was held, upon the principles of the common law, to be illegal, and on that ground a demurrer to the declaration was sustained.   Whenever the contract which the party seeks to enforce, be it express or implied, is expressly or by implication forbidden by the common or statute law, no court, either of law or equity, will lend its assistance to give it effect.   2 Chitty on Contracts, 971.   This is the well settled rule of law.

Mr. E. A. Otis, for appellees.

In the leading case of Wabash Railway Co. v. People, 118 U. S. 557, to which the learned counsel of appellant, though he argued it in the Supreme Court of the United States, discreetly omits any illusion, it is squarely decided that the Illinois statute did not apply to shipments from one State into another, and that, in so far as it did assume to so operate, it was unconstitutional and void.

The legality of the contract, then, is absolutely unaffected by any statute, State or Federal, and the whole matter turns upon the question whether such a contract is void at the common law.

In the absence of any statute, the Supreme Court of Illinois has uniformly sustained just such agreements as that

presented by this record.   In the case of Toledo, Wabash & Western Railway Company v. Elliott, 76 Ill. 67, the court hold that such a contract was not illegal, even under the statute of 1871 then in force, for the reason that the carrier was to be paid the usual, customary tariff, and the matter of rebate in the charges was a matter of private agreement between the carrier and the shipper with which the carrier was required to comply, and a judgment was affirmed against the railway company for the rebate it had agreed to pay.   Erie & Pacific Dispatch v. Cecil, 112 Ill. 181.

"The contract in question seems to be assailed mainly on the ground that if given effect, it would lead to great abuses and place great associations, like the defendant, completely at the mercy of its agents.   *   *   *   But the question we are considering is not a new one in this court.   Toledo, Wabash & Western Ry. Co. v. Elliott, 76 Ill. 67, like the present case, was an action to recover a rebate on freight paid by the shipper for the transportation of a lot of corn under a special agreement.   In that, as in this case, the contract under which the shipment was made was assailed on the ground that it was illegal and that the agent had no authority to make it. In answer to these objections this court then said : 'There was certainly an apparent authority in the local agent to contract for carrying the grain under some special arrangement. It seems quite certain, from all the evidence, the corn was shipped over defendant's road, on the agreement the company would allow plaintiffs a rebate on the usual charges; and having availed itself of the benefits of the contract, the company ought not now to be permitted to repudiate it, on the grounds their agent had no authority to make it. *   *   *   The contract was to carry the grain at the customary rates.   The rebate in the charges was matter of private agreement between the carriers and the shippers.'   What was then said is equally applicable here, and under the authority of that case we must hold the agreement in this valid and binding."

In the case of I. D. & S. R. R. Co. v. Ervin, 118 Ill. 250, cited by counsel, the court reconsider the rule laid down in

Erie & Pacific Dispatch v. Cecil, 112 Ill., for the specific rea-
son that the contract in that case was made under the subse-
quent statute of 1873, and the difference between the acts of
1871, under which the Elliott case was decided, and the later
act of 1875, was not called to the attention of the court. The
decision of the court is, that under the statute of 1873 a con-
tract to pay rebates by a carrier was prohibited by that law,
and was, therefore, illegal and void. It simply affirms the
doctrine that contracts for the repayment of rebates on ship-
ments *wholly within the State of Illinois* were prohibited by
the statute, and can not be collected. We have no cause of
complaint at this rule. The case under consideration lies
entirely outside of it and involves rebates on shipments from
interior points in the State of Iowa to Chicago in the State
of Illinois, over which the Supreme Court of the United
States hold, in the Wabash case already cited, the statute has
no control or effect. It is true, the court in the Erwin case
say that unjust discrimination by common carriers was not
sanctioned by the common law, but the court are careful
to base the decision on the statute of 1873, and I respect-
fully insist that what is intimated as to the illegality of these
contracts at common law seems to be only *dicta*, and was
never intended to, and did not, overrule its prior decisions,
that in the absence of statute, and even under the act of 1871,
such contracts would be enforced.

"In Johnson v. Pensacola and Perdido Railroad Co., 16 Fla.
623, Mr. Justice Westcott, in discussing a similar question to
the one involved here, has collected many authorities bearing
upon this point, and the conclusion which he reaches is:
' That as against a common or public carrier every person
has the same right; that in all cases where his common duty
controls, he can not refuse A and accommodate B; that all
the entire public have the right to the same *carriage for a
reasonable price at a reasonable charge for the service per-
formed*, and the commonness of the duty to carry for all, does
not involve a commonness or equality of compensation or
charge; that all a shipper can ask of a common carrier is, that
for services performed he shall charge no more than a

*reasonable sum to him.*' This conclusion is sustained by numerous authorities, both English and American. Peak v. North Staffordshire Railroad Company, 10 H. L. 511; Bostard v. Bostard, 2 Show. 82; Harris v. Packard, 3 Taunt. 264; Citizens' Bank v. The Nantucket Steamboat Company, 2 Story, 35; 4 Otto, 155; 1 Chitty, Cont., 684. In Fitchburg Railroad Company v. Gage, 12 Gray, 393, the Supreme Court of Massachusetts held, that 'a railroad corporation is not obliged, as a common carrier, to transport goods and merchandise for all persons at the same rate,' the common law rule being that equal justice be done to all parties. 'But the equality which is to be observed in relation to the public and to every individual consists in the restricted right to charge in each particular case of service a reasonable compensation and no more.'"

GARY J. This is an action by Henry P. Becker and Nathan Underwood, composing the firm of Becker & Underwood, to recover for the use of Benjamin W. Underwood and Eben Mathews, composing the firm of Underwood & Mathews, rebates on freights of wheat from Iowa, which the appellants had agreed to pay to the appellees. One of the defenses by the appellants is that such an agreement is against public policy and void at common law, and therefore the suit can not be maintained.

In the uncertain state of the law in this State upon that question, it will not be here discussed, as perhaps before another trial it may be authoritatively settled by the Supreme Court. The facts were all before the Superior Court by a stipulation between the parties. The parties for whose use the suit is brought claim under an order in these words:

"DIXON, ILL., April 30, 1885.
"To the Chicago & North-Western Railroad Company:

You will please pay to the firm of Underwood & Mathews all claims and moneys due or to become due us, for overcharges or rebates on freight shipped over your railroad, which claims and moneys have been this day assigned to said Underwood & Mathews.

(Signed)    BECKER & UNDERWOOD."

And a part of the stipulation is, that Underwood & Mathews were, and still are, creditors of Becker & Underwood, and received said order as security therefor. This order was presented to the railway company before May 11, 1885, and they paid on it to Underwood & Mathews, rebates on wheat shipped during the months of January, February and March, 1885, $968.91. Afterward the railway company paid a subsequent assignee the money now in controversy, amounting, without interest, to $1,606.89, for rebates, but of that sum less than $150, if no error has been made in computation, is upon wheat shipped before the date of the order. The stipulation says that in the early part of the year 1885, the agreement for rebates was made; that the rebates paid by the railway company to the subsequent assignee, accrued to the appellees under that agreement. The agreement was without limit as to time, and by its own force, would continue until one or the other party rescinded it, or the business governed by it, ceased.

The agreements of men in business are not to be held void for mistakes in grammar, but the fair construction of this order is that no such mistake was made. The appellees used the verb " to ship " in a past tense in order to express a past action. Fisher v. Minot, 10 Gray (Mass.), 260. Neither the firm giving nor the one taking the order could have supposed that the appellees were hypothecating all their future business with the railway to Underwood & Mathews. The order only covers money due or to become due on wheat that had been shipped when the order was drawn. To construe it as embracing future shipments takes from the appellees as a firm all right to receive any rebates from the appellants, whether accruing under the then existing agreement or otherwise, at least so long as any portion of their debt to Underwood & Mathews remained unpaid. The recovery of $1,940 is therefore unwarranted by the terms of the order.

But there is another ground upon which the right to recover fails. Payment to the subsequent assignee was a good defense against the appellees themselves. It would be good against the parties for whose use the suit was brought, so far

and so far only as in equity they were the owners of the claim sued upon.

How much the appellees still owed them at the time of the trial upon the debt that the order was given to secure does not appear. In any event there could not be a larger amount recovered than the appellees still owed upon the debt.

The judgment must be reversed and the cause remanded.

*Reversed and remanded.*